# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RUDOLPH JOHNSON,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **vs.** | *    **Civil Action No. ADC-17-1819** |
| | * |
| **COMMISSIONER, SOCIAL SECURITY** | * |
| **ADMINISTRATION,**[1] | * |
| | * |
| **Defendant.** | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On July 3, 2017, Rudolph Johnson ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 15 & 18), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the decision of the SSA is AFFIRMED.

## PROCEDURAL HISTORY

On February 4, 2013, Plaintiff filed a Title II application for DIB as well as a separate Title XVI application for SSI, which both alleged disability beginning on March 15, 2010. His claims were denied initially and upon reconsideration on July 25, 2013 and January 24, 2014,

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

1

respectively.[2]  Subsequently, on January 29, 2014, Plaintiff filed a written request for a hearing and, on December 9, 2015, an Administrative Law Judge ("ALJ") presided over a hearing held in Baltimore, Maryland.  At the hearing, Plaintiff amended his alleged onset date to July 25, 2013. ECF No. 12 at 19.  On February 2, 2016, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [("the Act")], from July 25, 2013, through the date of this decision."  *Id.* at 31.  Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on May 10, 2017, the Appeals Council denied Plaintiff's request for review.  Thus, the decision rendered by the ALJ became the final decision of the SSA.  *See* 20 C.F.R. § 416.1481 (2017); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On July 3, 2017, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of Plaintiff's disability applications.  On November 22, 2017, Plaintiff filed a Motion for Summary Judgment, and on February 26, 2018, Defendant filed a Motion for Summary Judgment.[3]  This matter is now fully briefed and the Court has reviewed both parties' motions for summary judgement.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted).  The Court, however, does not conduct a *de novo* review of the evidence.  Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); *see Smith v. Chater*,

---

[2] At the reconsideration level, Plaintiff amended his alleged onset date to January 1, 2013.

[3] On April 4, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r, Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citation and internal quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation and internal quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

3

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and SSI, a claimant must establish that he is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [SSA] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the

4

duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.

20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.*, at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§

404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 25, 2013. ECF No. 12 at 22. At step two, the ALJ found that Plaintiff had the severe impairments of "major depressive disorder; status post right knee surgery; bilateral knee pain; right wrist pain; and back pain." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 23. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can perform no climbing of ladders and scaffolds, but can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl and balance. He can also frequently handle and finger with the right, non-dominant hand; and can have frequent use of hand controls with the right hand. He is further limited to performing simple, routine, repetitive tasks, but not those done at a production rate pace, as in an assembly line, where each task must be completed within a fixed time. In addition, time off-task during the workday can be accommodated by normal breaks.

*Id.* at 24–25. The ALJ then determined that Plaintiff is unable to perform any past relevant work. *Id.* at 30. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], from July 25, 2013, through the date of this decision." *Id.* at 31.

7

Plaintiff raises five allegations of error on appeal: (1) that the ALJ's RFC determination inadequately accounted for Plaintiff's moderate difficulties with concentration, persistence, and pace; (2) that the ALJ improperly determined Plaintiff's credibility; (3) that substantial evidence did not support the ALJ's RFC determination for his physical impairments; (4) that the ALJ erred by relying on the vocational expert's ("VE") testimony; and (5) that the ALJ failed to review Plaintiff's prior claim. Each of Plaintiff's arguments lacks merit and is addressed below.

## A. The ALJ Did Not Err During Step Four of the Sequential Evaluation.

The Court will first discuss Plaintiff's two allegations relating to the ALJ's consideration of Plaintiff's moderate difficulty with concentration, persistence, and pace and the ALJ's evaluation of Plaintiff's credibility, and then the Court will proceed to the ALJ's RFC determination, which Plaintiff asserts is also erroneous.

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. § 404.1545(a) (ordering the ALJ to consider the entire record); SSR 96-8p, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). If more than one impairment is present, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various

impairments upon a disability benefit claimant, the [SSA] must consider the combined effect of a claimant's impairments and not fragmentize them." (citation omitted)).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio*, 780 F.3d at 636 (footnote omitted) (quoting SSR 96-8p).

> 1. The ALJ's RFC determination properly accounted for Plaintiff's moderate difficulties with concentration, persistence, and pace.

At step three of the sequential evaluation, the ALJ determined that "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties," and further explained that:

> [a]t the hearing, [Plaintiff's] testimony was generally responsive, coherent, and without any apparent lapses of attention. He testified he has a short memory, which has recently worsened, and finds it hard to concentrate. He also testified he can follow instructions

> "okay," but finds it difficult to make decisions. On an undated function report, he reported he needs reminders to shave, shower, and take his medication. He also reported he does not finish what he starts.

ECF No. 12 at 24 (record citation omitted). The ALJ then limited Plaintiff's RFC as follows:

> Plaintiff is further limited to performing simple, routine, repetitive tasks, but not those done at a production rate pace, as in an assembly line, where each task must be completed within a fixed time. In addition, time off-task during the workday can be accommodated by normal breaks.

*Id.* at 24–25. Plaintiff contends that the ALJ's RFC assessment failed to adequately account for his moderate difficulties in concentration, persistence, or pace in violation of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). ECF No. 15-1 at 18. The Court disagrees.

In *Mascio*, the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task. The latter ability concerns the broad functional area of concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. Like *Mascio*, the ALJ's RFC determination included a non-exertional restriction to simple, routine, repetitive tasks. ECF No. 12 at 24. Unlike in *Mascio*, however, the ALJ's RFC assessment in this case also included additional limitations which restricted Plaintiff to tasks not "done at a production rate pace, as in an assembly line, where each task must be completed within a fixed time" and stated that Plaintiff's time off-task could be accommodated by normal breaks. *Id.*

While a limitation to simple, routine, repetitive tasks alone is insufficient under *Mascio*, courts in this district have uniformly found that further RFC restrictions limiting claimants to work with no quotas adequately account for a claimant's moderate limitations in concentration, persistence, and pace. *See, e.g., Mason v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3362, 2016 WL 225689, at *3 (D.Md. Jan. 19, 2016) (finding that the ALJ's inclusion of a limitation "to perform work that does not require the satisfaction of a production pace" accounted for the

claimant's "no more than moderate" limitation in concentration, persistence, or pace) (emphasis added); *Chase v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-2961, 2016 WL 199410, at *3 (D.Md. Jan. 15, 2016) (finding no error warranting remand under *Mascio* where the ALJ included a limitation of "no production rate or paced work" to account for Plaintiff's moderate limitation in concentration, persistence, or pace) (record citations omitted)); *Shirey v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-261, 2015 WL 7012718, at *2–3 (D.Md. Nov. 10, 2015) (finding that the RFC assessment included an inability to stay on task where the RFC "limited [the claimant] to work that is simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks in a work environment free of fast paced production requirements which is defined as constant activity with work tasks performed sequentially in rapid succession"); *Rayman v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL 6870053, at *3 (D.Md. Nov. 6, 2015) (finding that the RFC assessment included an inability to stay on task where the RFC stated that "the claimant is limited to unskilled work; requires a low stress environment, such that there are few changes in the work setting and no fast-paced or quota production standards"). Furthermore, this Court has acknowledged that a limitation related to a claimant's ability to stay on task accounts for his moderate limitations in concentration, persistence, and pace. *See Fisher v. Colvin*, No. TMD-14-1011, 2015 WL 5287120, at *9 (D.Md. Sept. 9, 2015) (holding that an RFC stating that "due to concentration and focus problems, [the claimant] may be off task 5% of the work day" properly related to the claimant's ability to stay on task and was distinguishable from *Mascio*).

Here, contrary to Plaintiff's assertions, the ALJ's finding specifically, and appropriately, addressed Plaintiff's ability to stay on task by restricting Plaintiff to work not done at a "production pace, as in an assembly line, where each task must be completed within a fixed time." ECF No. 12 at 25–26. The ALJ further accounted for Plaintiff's limitation in

concentration, persistence, and pace by stating that Plaintiff's "time off-task during the workday can be accommodated by normal breaks." *Id.* at 25. Thus, the ALJ's RFC assessment adequately accounted for Plaintiff's moderate limitation in concentration, persistence, and pace. Accordingly, remand based on *Mascio* is unwarranted in this case.

2. The ALJ properly evaluated Plaintiff's credibility.

Plaintiff asserts that the ALJ improperly determined that he was only partially credible by relying on objective medical evidence in violation of *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017). ECF No. 15-1 at 14–15. Plaintiff's argument is unavailing.

The Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and his treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR

16-3p, 2017 WL 5180304, at *1–12 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's ability to perform daily activities, activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. *Id.* at *6.

The ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding his pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate his allegations of pain. 20 C.F.R. § 404.1529; *see Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [the claimant's] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

In the present case, the ALJ appropriately recognized his obligation to evaluate the credibility of Plaintiff's testimony with regard to his symptoms and the restrictions caused by his impairments in accordance with *Lewis*. After analyzing the evidence in the record, the ALJ

13

concluded that Plaintiff's "medically determinable impairments cannot reasonably be expected to produce the symptoms to the degree alleged by [Plaintiff]" and that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." ECF No. 12 at 26–27. The ALJ found that Plaintiff was partially credible and explained as follows:

> [T]he subjective factors in this case are generally not persuasive. The undersigned notes that [Plaintiff] is able to care for himself, despite his impairments. He also maintains the ability to care for his mother (to include taking care of her finances and making sure she takes her medications). He further maintains the ability to use public transportation and shop in stores, despite stating he prefers to be alone. The undersigned also notes that the medical evidence of record indicates physical examinations were generally normal and consistently indicated normal gait and strength in both the upper and lower extremities. Despite complaints of intermittent back, knee and wrist pain, there is very little objective evidence in the record. He has also not been described [sic] any pain medication. The undersigned further notes that [Plaintiff] has had no inpatient mental health treatment or emergency room visitations. His GAF scores have also been consistently over 50 and as high as 68 and appear to improve with treatment and medication. The undersigned further notes that most examinations in the record describe [Plaintiff] as well-nourished and in no acute distress. Specifically, a consultative examination indicated [Plaintiff] had problems with lifting and carrying with the right hand due to wrist pain and may have a problem with prolonged standing due to right knee pain. However, at the mental consultative examination he attended on June 22, 2013, he was observed walking slowly with an even gait. June 24, 2013 x-rays of the lumbar spine, right wrist and knee were also negative and no significant arthritic changes are present.

ECF No. 12 at 28 (citation omitted). Thus, the ALJ acknowledged Plaintiff's testimony about the pain symptoms caused by his physical impairments, but he also pointed to several facts which were inconsistent with the Plaintiff's claims of disabling pain. While Plaintiff is correct that the ALJ discussed inconsistencies with the objective medical evidence, the ALJ also discussed several concerns stemming from Plaintiff's testimony. For example, the ALJ

14

referenced Plaintiff's own testimony that his "activities of daily living are generally functional and independent," specifically that Plaintiff cares for his mother, including looking out for her finances and that she takes her medications, has no problem with his personal care, prepares simple meals, cleans his room with assistance, takes the bus, and shops in stores. *Id.* at 23, 25–27. The ALJ then properly considered the evidence of record and found that the evidence contradicted Plaintiff's subjective claims regarding his impairments and their impact on his ability to work. *See Smith-Brim v. Colvin*, No. PMJ 14-683, 2015 WL 4724977, at \*15 (D.Md. Aug. 7, 2015) (upholding a finding of no disability where "Plaintiff reported activities involving crocheting, reading, spending time with family, watching television news programs, and using a computer for social networking and email"); *see also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day).

Moreover, the ALJ appropriately cited to Plaintiff's improvement with treatment and medication, including medication for his depression and the absence of prescribed pain medication, as evidence that his pain was not as severe as Plaintiff alleged. ECF No. 12 at 26–27; *see Hinton v. Berryhill*, No. MJG-16-4043, 2017 WL 4404441, at \*3 (D.Md. Oct. 4, 2017); *see also Dunn v. Colvin*, 607 F.App'x 264, 273–74 (4th Cir. 2015) (determining that the conservative nature of treatment is an adequate basis to support an ALJ's conclusion that a claimant's testimony of her disabling condition was not credible); *Mickles*, 29 F.3d at 930 ("[A]n unexplained inconsistency between the claimant's characterization of the severity of his condition and the treatment he sought to alleviate that condition is highly probative of the claimant's credibility."). As this Court has noted, "symptoms that can be reasonably controlled by medication or treatment are not disabling." *Tilley v. Colvin*, No. TMD 14-3266, 2016 WL

775420, at *12 (D.Md. Feb. 29, 2016) (citing *Gross*, 785 F.2d at 1166). Thus, the ALJ's detailed evaluation of the record evidence against Plaintiff's statements regarding his symptoms amply supports the ALJ's conclusion that Plaintiff's alleged limitations were not entirely credible, and the ALJ properly evaluated Plaintiff's credibility, supporting his findings with substantial evidence.

   3. The ALJ properly assessed Plaintiff's RFC.

  Where a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must then assess the claimant's RFC. RFC assesses "the maximum degrees to which the individual retains the capacity for sustained performance of the physical—mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(c). Plaintiff argues that the ALJ, in determining Plaintiff's RFC, (1) improperly weighed the medical opinion evidence; and (2) failed to articulate a detailed function-by-function assessment of Plaintiff's functional abilities in compliance with SSR 96-8p. ECF No. 15-1 at 21–25. Specifically, Plaintiff contends that the ALJ erred by disregarding the medical opinions of the state agency examiner, the consultative examiner, and his treating physician regarding his alleged exertional limitations. ECF No. 15-1 at 21–25. The Court disagrees with both of Plaintiff's arguments.

  First, a treating physician's opinion is given controlling weight, unless it is not supported by clinical evidence or is inconsistent with other substantial evidence. *See Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, including the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6). The SSA must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p,

16

1996 WL 374180, at *3 (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Here, the ALJ provided substantial evidence to support his assignments of "little" weight to Plaintiff's treating physician, "partial" weight to the consultative examiner, and "partial" and "little" weight to the state agency opinion, articulating his reasoning as follows:

> As for the opinion evidence, partial weight is accorded to the initial State agency opinion finding [Plaintiff]'s impairments of osteoarthrosis and allied disorders and affective disorders were severe. They also found [Plaintiff] can occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and/or walk for four hours in an 8-hour workday with normal breaks; and sit for 6 hours in an 8-hour workday with normal breaks. . . . The undersigned finds that a light level of exertion is generally supported, however, he also finds that the limitation to stand and walk for four hours per week is not supported by the objective evidence or the at-hearing complaints of intermittent pain and swelling issues.
>
> . . . .
>
> Partial weight is accorded to the June 20, 2013 consultative examination completed by Gregory Ross, M.D. diagnosing [Plaintiff] with right wrist problem; back pain; depression. Dr. Ross also concluded [Plaintiff] had normal posture and full range of motion in the cervical and lumbar spine. Dr. Ross further concluded [Plaintiff] should be able to sit, walk, handle objects, hear, speak and travel; but would have problems with lifting and carrying with the right hand due to wrist pain. In addition, Dr. Ross concluded [Plaintiff] may have a problem with prolonged standing due to right knee pain. More weight is accorded to the finding regarding [Plaintiff]'s ability to sit, walk, handle, travel, etc.; while less weight is accorded to the lifting and prolonged standing "limitations." The undersigned finds that those findings are non-specific and inconsistent with the medical evidence of record, as they appear to be based on [Plaintiff]'s subjective reports of pain and not objective test results and findings.

. . . .

> Little weight is accorded to the March 11, 2013 opinion of treating physician A. Nwankpah, M.D. diagnosing [Plaintiff] with backache, unknown etiology, and depression. Dr. Nwankpah also concluded [Plaintiff] had difficulty standing and sitting for long periods of time. Dr. Nwankpah further concluded [Plaintiff]'s chronic back pain does not allow for sustained activity, such as sit for 6 hours in an 8-hour workday; stand for two hours in an 8-hour workday; and lift up to 10 pounds on a sustained, regular and continuing basis. These opinions appear based on [Plaintiff]'s reports and are not consistent with the record as a whole, including the objective medical evidence, [Plaintiff]'s treatment history, and his activities of daily living.

ECF No. 12 at 28–29 (record citations omitted). Here, the ALJ explained his reasoning why these medical opinions were not supported by the medical evidence as a whole. *See Chavis v. Berryhill*, No. ADC-17-1123, 2018 WL 1033267, at *12–13 (D.Md. Feb. 22, 2018). For example, the ALJ noted that he had observed a generally normal June 24, 2013 x-ray of the lumbar spine and that a March 8, 2013 musculoskeletal examination showed normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. ECF No. 12 at 27 (record citation omitted). Moreover, Plaintiff complained of "intermittent back, knee and wrist pain" which gets worse when Plaintiff walks and stands, yet the ALJ noted that on several occasions, Plaintiff's medical records show that he "reported feeling well and had few complaints" and that his physical examinations were generally normal. *Id.* at 27–28. These inconsistencies, in addition to others cited by the ALJ, provide sufficient justification for the ALJ's decisions in weighing the medical opinions. Accordingly, the ALJ's RFC analysis is consistent with the medical evidence of record and rests on a sufficient evidentiary basis.

Second, Plaintiff contends that the ALJ's physical RFC limitations fail to address "how long he can sit, stand, lift and carry despite his severe s/p knee surgery, bilateral knee pain, right wrist pain and back pain." ECF No. 15-1 at 21. The regulations explain that, in formulating an

RFC, an ALJ must express capacity in terms of work-related functions and provide examples of various types of functions that could be limited. SSR 96-8p. The regulations do not, however, require an ALJ to discuss a functional area where there is no limitation. Plaintiff fails to highlight, and the Court is unable to find, any medical evidence supporting any functional impairment that is not addressed by current limitations and which differs from the medical opinions which the ALJ properly evaluated. In determining that Plaintiff's RFC would not be limited for sitting, standing, lifting, and carrying, the ALJ considered Plaintiff's credibility regarding the effects of his symptoms, as well as the medical evidence of record, assigning "partial" or "little" weight to the medical opinions of the treating, consultative, and state agency assessments. ECF No. 12 at 25–30. Accordingly, Plaintiff's argument in this regard is without merit because substantial evidence supports the assessment of Plaintiff's RFC by the ALJ.

## B. The ALJ Properly Considered The VE's Opinion.

Next, Plaintiff disagrees with the ALJ's consideration of the VE's opinion, arguing that the ALJ erred when he relied on the VE's testimony that her testimony did not conflict with the Dictionary of Occupational Titles ("DOT"). ECF No. 15-1 at 10. Specifically, Plaintiff contends that the jobs identified by the VE require a greater reasoning ability which conflict with the limitations in Plaintiff's RFC. The Court finds no error.

The Commissioner employs VEs to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)–(c), 416.960(b)–(c). The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). SSR 00-4p clarifies 20 C.F.R. § 404.1566, which states, without more, that ALJs will consider both the DOT and VE testimony to determine

whether a claimant can find work suited to his RFC. SSR 00-4p explains that its purpose is to require the ALJ (not the VE) to "[i]dentify and obtain a reasonable explanation" for conflicts between the VE's testimony and the DOT, and to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." 2000 WL 1898704, at *1 (Dec. 4, 2000). The Ruling then proceeds to require that the ALJ undertake exactly these responsibilities. First, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT;" and second, "[i]f the VE's . . . evidence appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* at *4. Notably, this second requirement is so independent of the first that it does not rest on the VE's identification of a conflict. Rather, SSR 00-4p directs the ALJ to "resolve the conflict by determining if the explanation given by the VE . . . is reasonable," *id.* at *2, and to "explain the resolution of the conflict irrespective of how the conflict was identified," *id.* at *4.

Here, during the hearing, the VE testified that Plaintiff could perform three light, unskilled, SVP 2 jobs: photocopy operator, gate tender, and information clerk. ECF No. 12 at 73–74. Furthermore, the VE was directly asked whether her testimony was consistent with the DOT and the VE answered that her testimony was consistent. *Id.* at 74. Based on this testimony, at step five of his analysis, the ALJ determined that the VE's testimony was consistent with the information contained in the DOT. *Id.* at 31.

As the record shows, the ALJ directly questioned the VE about the consistency of her testimony and the DOT and the VE stated that no conflict existed. An ALJ, however, has not fulfilled his affirmative duty merely because the VE responds "yes" when asked if her testimony is consistent with the DOT. *Pearson,* 810 F.3d at 208. Rather, the ALJ independently must identify apparent conflicts between the VE's testimony and the DOT. *Id.* at 209. "[I]n many

cases, testimony may only appear to conflict with the [DOT], and the [VE] may be able to explain that, in fact, no conflict exists." *Id.* (emphasis omitted). A VE's testimony that apparently conflicts with the DOT "can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209–10 (citing SSR 00-4p, at *2).

According to the DOT, the job of gate tender requires a reasoning level of three. DOT 372.667-030, 1991 WL 673099 (Jan. 1, 2016). Level-three reasoning requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, app. C, 1991 WL 688702 (Jan. 1, 2008). The ALJ's assessment of Plaintiff's RFC limited him to "simple, routine, repetitive tasks," ECF No. 12 at 24, a limitation that Plaintiff argues conflicts with the demands of level-three reasoning. Plaintiff is incorrect because contrary to Plaintiff's position, this Court has consistently found that reasoning levels of two or three are consistent with limitations to simple instructions. *Heckner v. Comm'r of Soc. Sec.*, No. TJS-12-0379, 2013 WL 5234114, at *3 (D.Md. Sept. 12, 2013); *Blum v. Comm'r, Soc. Sec. Admin.*, No. SAG-12-1833, 2013 WL 2902682, at *3 (D.Md. June 11, 2013) (citing *Clarkson v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-631, 2013 WL 308954, at *2 (D.Md. Jan. 24, 2013)). Accordingly, the ALJ did not err by relying on the VE's testimony.

Furthermore, even if a conflict existed, it would be harmless because the VE identified the jobs of photocopy operator and information clerk to be consistent with the ALJ's assessment of Plaintiff's RFC. Even just considering photocopy operator, which has a reasoning level of two and is consistent with Plaintiff's RFC, these jobs exist in significant numbers in the national

and local economies. ECF No. 12 at 31; *see Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the [VE] constitute an insignificant number."); DOT 207.685-014, 1991 WL 671745 (Jan. 1, 2016). Thus, even if the ALJ accepted the VE's incorrect consistency testimony into the final determination of Plaintiff's application, there is no reversible error because only one of the DOT entries conflicts with the VE's testimony.

## C. The ALJ Did Not Err By Not Considering The Decision For Plaintiff's Prior Claim.

Finally, Plaintiff argues that the ALJ erred by not reviewing prior medical evidence of record in order to fully adjudicate Plaintiff's current claim. ECF No. 15-1 at 25. To support his position, Plaintiff cites to *Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999). *Id.* at 27. Defendant counters that *Albright* and SSA's Acquiescence Ruling ("AR") 00-1(4) instead require the ALJ to consider the prior ALJ decision, the prior finding, rather than the prior file, including medical evidence. ECF No. 18-1 at 20–21. The Court rejects Plaintiff's argument.

An Acquiescence Ruling ("AR") is a ruling that the SSA issues that interprets a holding of a United States Circuit Court of Appeals concerning the Act. *Albright*, 174 F.3d at 474. Interpreting *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987), and *Albright*, AR 00-1(4) states that an adjudicator "must consider a finding . . . made in a final decision by an [ALJ] or the Appeals Council on [a] prior . . . claim." AR 00-1(4), 2000 WL 43774, at *1 (Jan. 12, 2000) (emphasis added). Specifically, an adjudicator "must consider such finding as evidence and give it appropriate weight in light of all the relevant facts and circumstances when adjudicating a subsequent disability claim." *Id.* at *4. AR 00-1(4) then describes certain factors that the adjudicator should consider, such as:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time; (2) the likelihood of such a change, considering the length of time that has elapsed . . . ; and (3) the extent that evidence not considered in the [previous] final decision . . . provides a basis for making a different finding.

*Id.*

Here, the ALJ discussed the prior decision, stating as follows:

> I note that the prior decision, dated December 27, 2012, completed by [another ALJ], found [Plaintiff] has the severe impairments of depressive disorder, attention deficit disorder, alcohol dependence disorder, and status post knee surgery (2002); and nonsevere impairments of hypertension, hyperlipidemia, GERD, bilateral wrist pain, and back pain. [The ALJ] also found [Plaintiff] could perform medium work except he can occasionally finger and handle on the non-dominant hand; occasionally climb, crawl, and kneel; and perform simple, routine and repetitive tasks. [The prior ALJ] further found [Plaintiff] was unable to perform his past relevant work as a security guard and a machine operator. I find that the severity of [Plaintiff]'s medically determinable impairments shown in the medical evidence of record since November 24, 2010 is inconsistent with that considered in the prior decision, and has changed with the passage of time, as is set out in the [RFC] below. I also note that the prior decision covers the period from July 25, 2013 through the present. Therefore, I accord little weight to the opinion of [the prior ALJ].

ECF No. 12 at 19 (record citation omitted). Notably, the ALJ mentioned Plaintiff's prior attempts to get benefits, then evaluated the whole record, applied the governing legal standard, and denied Plaintiff's claim. *See id.* at 19–31; *see also Mench v. Astrue*, No. SKG 12-1184, 2013 WL 4747971 at \*9 (D.Md. Sept. 3, 2013) (finding that the ALJ properly considered and weighed a prior decision based on new evidence and the length of time between the prior decision and the subsequent decision). Thus, the ALJ properly considered the factors in AR 00-1(4) to determine that Plaintiff's medically determinable impairments had worsened, such that the prior decision found that Plaintiff could perform medium work and this decision determined that he could only perform light work.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Act from July 25, 2013 through the date of the ALJ's decision. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the decision of the SSA is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 16 May 2018

A. David Copperthite
United States Magistrate Judge